**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | | |
|---|---|---|
| KIERSTEN QUICK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | File No. _____ |
| v. | ) | |
| | ) | |
| STATE TROOPER JOSEPH GEDDIE, | ) | **JURY TRIAL DEMANDED** |
| individually, and DADE COUNTY | ) | |
| SHERIFF'S DEPUTY DENNY REYES, | ) | |
| individually, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff Kiersten Quick and brings this action against

Defendants under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth

Amendments of the United States Constitution.

## INTRODUCTION

1.

This case is about a gratuitous and illegal arrest, use of force, and

prosecution undertaken by Defendants against Ms. Quick. On the night before

Thanksgiving, Defendants arrested Plaintiff for no reason.  Defendant Trooper

Geddie tackled her down into a ditch without provocation or warning, and then

charged her with offenses she obviously did not commit, including a felony. All charges were later dropped.

## JURISDICTION AND VENUE

### 2.

This is a civil and constitutional rights action arising under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

### 3.

Venue in this Court is proper under 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims arose in this district and division.

## PARTIES

### 4.

Kiersten Quick ("Plaintiff" or "Quick") is a United States citizen and resident of Georgia.

### 5.

Defendant State Trooper Joseph Geddie ("Trooper Geddie") is employed as a State Trooper in the Georgia State Patrol division of the Georgia Department of Public Safety. Defendant Trooper Geddie is sued in his individual capacity. At all times relevant to the complaint, Defendant Trooper Geddie acted under the color of law.

6.

Defendant Sheriff's Deputy Denny Reyes ("Deputy Reyes") is employed as a Sheriff's Deputy by the Dade County Sheriff's Office. Deputy Reyes is sued in his individual capacity. At all times relevant to the complaint, Deputy Reyes acted under the color of law.

## FACTUAL ALLEGATIONS

7.

Kiersten Quick is a 50-year-old woman who works as an accountant and lives in Dade County, Georgia.

8.

On the evening of Wednesday November 23, 2016, Plaintiff was in the middle of making final arrangements for the Thanksgiving holiday when she learned that her daughter had been in a single vehicle accident near the intersection of New England Road and Maine Avenue in Dade County.

9.

Plaintiff travelled to the site of the accident with her fiancé to check on her daughter and render aid as needed.

10.

Her daughter's friend was also at the site of the accident by the time Quick and her fiancé arrived.

11.

Defendant Deputy Reyes and Defendant Trooper Geddie were at the site of the accident when Quick arrived.

12.

When Quick arrived, she saw that Defendant Trooper Geddie was arresting her daughter because she had a suspended drivers' license.

13.

Upon learning this, Quick said, "Are you fucking kidding me?"

14.

Quick did not raise her voice in making this remark.

15.

Defendant Trooper Geddie was upset by this remark.

16.

Ignoring the fiancé and the daughter's friend, Defendant Trooper Geddie ordered Quick alone to "go back over there and stand there."

17.

Quick immediately moved as directed by Defendant Trooper Geddie.

18.

She moved away from Defendant Trooper Geddie and to the other side of the crashed vehicle so that the crashed vehicle then stood between her and Defendant Trooper Geddie as he continued his arrest.

19.

Not satisfied with Quick's response, Defendant Trooper Geddie made the same command in a more threatening tone: "Go back over there or you will go to jail for obstruction."

20.

Quick was not interfering in any way with Defendant Trooper Geddie at this—or any—time.

21.

Defendant Trooper Geddie's speech was directed at Quick and not at the two other individuals in the same area who Defendant Trooper Geddie had no issue with.

22.

Despite Quick's immediate compliance, Defendant Trooper Geddie threatened Quick because of her speech.

23.

After placing Plaintiff's handcuffed daughter in the back of his vehicle, Defendant Trooper Geddie then passed by the daughter's friend and the fiancé, charging towards Quick.

24.

Ignoring that she had followed his instructions to "go back over there," and pointing his finger aggressively, he threatened her again, "Hey! Ma'am, I'm going to tell you one more time to go back out over there or you're going to jail."

25.

With his index finger inches from her face, Defendant Trooper Geddie yelled: "You. Go. Now."

26.

Quick then pointed out that she was not obstructing anything and claimed that Defendant Trooper Geddie was harassing her.

27.

In response, Defendant Trooper Geddie then grabbed Quick by the arm, spun her around, and tackled her down into the ditch where the car was stuck.

28.

Quick's head was slammed into the ground.

29.

Defendant Trooper Geddie offered no warning or notice that she was under arrest prior to his use of force.

30.

The force Defendant Trooper Geddie used caused Quick's glasses to fly off her head, breaking on impact or from being crushed as Geddie rolled on top of her.

31.

Defendant Trooper Geddie then yanked her arm despite the fact that she offered no resistance.

32.

This use of force was unnecessary.

33.

During the entirety of this use of force Defendant Deputy Reyes did nothing to intervene despite the force clearly being improper and excessive.

34.

Defendant Trooper Geddie charged Quick with two crimes.

35.

He charged her with disorderly conduct for using "obscene language" and being "belligerent."

36.

And he charged her with felony obstruction of a law enforcement officer because she "resisted and obstructed being placed under arrest."

37.

Defendant Deputy Reyes took custody of Quick, putting her into his car for transport to the jail for booking.

38.

Quick was then transported to the hospital where she received x-rays for her arm and elbow.

39.

Quick was diagnosed with soft tissue contusions and was prescribed the pain killer tramadol.

40.

Quick was detained in the Dade County Jail until the middle of the next day.

41.

On December 5, 2016, the Dade Count District Attorney issued an accusation as to the two charges initiated by Defendant Trooper Geddie.

42.

Months later, after the district attorney reviewed the footage of the incident from Defendant Trooper Geddie's dashboard camera, all charges against Quick were dismissed.

43.

The arrest and force used against Quick was largely captured by Defendant Trooper Geddie's dashboard camera.[1]

## COUNT I
### *False Arrest under 42 U.S.C. § 1983 (against Defendants Geddie and Reyes)*

44.

In arresting Quick, Defendants falsely accused her of committing disorderly conduct and obstruction of an officer.

45.

No reasonable officer in Defendants' position could have believed that Quick committed the offenses of disorderly conduct or obstruction of an officer or any other criminal act.

---

[1] According to the Dade County Sheriff's Office, camera equipment maintained by Deputy Reyes was not operational during the event in question.

46.

Based upon the facts known by Defendants, no reasonable police officer could believe that probable cause existed to arrest Quick, and there was no arguable probable cause for her arrest.

47.

After Defendant Trooper Geddie seized Quick, Defendant Deputy Reyes took custody of her and transported her to the Dade County Jail.

48.

Defendant Deputy Reyes was an active participant in Quick's arrest and observed all parts of her arrests and the events leading to her arrest.

49.

Defendants acted with conscious indifference and reckless disregard for the consequences of their actions such that an award of punitive damages is authorized under federal law.

50.

As a result of Plaintiff's arrest, she suffered a loss of liberty, reputational damage, humiliation, and emotional distress.

## COUNT II
### *Malicious Prosecution under 42 U.S.C. § 1983 (against Defendant Geddie)*

51.

Quick's criminal prosecution was initiated by Defendant Trooper Geddie via his signing of two Uniform Traffic Citation, Summons and Accusation forms against Quick for disorderly conduct and obstruction of an officer.

52.

Quick was detained pursuant to this initiation of legal process, suffering a loss of liberty.

53.

Quick's criminal prosecution was made without probable cause or arguable probable cause.

54.

Such prosecution terminated in Quick's favor when the Dade County prosecutors dropped her charges and submitted a motion to enter *nolle prosequi* on January 13, 2017.

55.

Defendant Trooper Geddie acted with conscious indifference, reckless disregard for the consequences of his actions, and malice such that an award of punitive damages is authorized under federal law.

56.

As a result of Plaintiff's prosecution, she suffered a loss of liberty, reputational damage, humiliation, and emotional distress.

## COUNT III
### *Excessive Force under 42 U.S.C. § 1983 (against Defendants Geddie and Reyes)*

57.

Defendant Trooper Geddie used excessive force against Quick when he used gratuitous force against her when she offered no resistance and posed no threat.

58.

There was no need for Defendant Trooper Geddie to apply any force.

59.

Defendant Trooper Geddie used a significant amount of force.

60.

Quick sustained a painful injury.

61.

Defendant Trooper Geddie's force was not applied in good faith; instead, it was rendered maliciously and sadistically.

62.

Defendant Reyes was in a position to intervene and inexcusably failed to do so.

## COUNT IV
### *First Amendment Retaliation under 42 U.S.C. § 1983 (against Defendants Geddie and Reyes)*

63.

Defendants arrested Quick because she asked why her daughter was being arrested and in so doing used one profane word.

64.

Quick said, "Are you fucking kidding me?"

65.

Quick's speech was constitutionally protected.

66.

Quick did not threaten Defendant Trooper Geddie or anyone else.

67.

Quick's language did not create a clear and present threat of imminent danger.

68.

Defendants then retaliated against Quick by arresting her.

69.

Defendant Trooper Geddie also retaliated against Quick by using unlawful force against her.

70.

Defendants acted with conscious indifference, reckless disregard for the consequences of his actions, and malice such that an award of punitive damages is authorized under federal law.

71.

Such retaliation adversely affected Quick's protected speech, chilling her and punishing her for engaging in protected activity.

WHEREFORE, Plaintiff demands the following:

a)      That this action be tried by a jury;

b)      That judgment be entered in favor of Plaintiff and against Defendants in an amount to be determined by the enlightened conscience of fair and impartial jurors to the extent allowed by law;

c)      That Plaintiff be awarded punitive damages against Defendants;

d)      That Plaintiff be awarded attorneys' fees under 42 U.S.C. § 1983 and Georgia law;

e)      That all costs of this action be taxed against Defendants; and

f)      That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

Respectfully submitted this 18th day of August, 2017.

/s/ Zack Greenamyre
Zack Greenamyre
Georgia Bar No. 293002

MITCHELL & SHAPIRO LLP
3490 Piedmont Road, Suite 650
Atlanta, Georgia 30305
404-812-4747
zack@mitchellshapiro.com

*Counsel for Plaintiff*

## CERTIFICATION OF ELECTRONIC FILING

The undersigned hereby certifies the filing of this Plaintiff's Complaint upon the parties and all counsel by the Court's Electronic Filing System.

This 18th day of August, 2017.

*/s/ Zack Greenamyre*
Zack Greenamyre
Georgia Bar No. 293002